UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHAMEEKIA ALLEN,

          **Plaintiff,**

    -against-

UNITED CEREBRAL PALSY OF NEW YORK
CITY, INC. and LOUELLA PURKETT,

          **Defendants.**

---

**11 CV 8057 (CM)(KNF)**
FINAL
**PRE-TRIAL ORDER**



      The parties having conferred among themselves, pursuant to Federal Rule of Civil

Procedure Rule 16 and pursuant to the individual rules of this Court, the following

statements, directions and agreements are adopted as the Pre-trial Order herein:

## I. NATURE OF CASE

      Plaintiff Shameekia Allen ("Plaintiff" or "Allen") alleges that Defendant United

Cerebral Palsy of New York City, Inc. ("UCP") discriminated against her because of her

race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§ 2000e *et seq.* ("Title VII") and also alleges that UCP retaliated against her pursuant to

Title VII when she complained that Defendant Louella Purkett ("Purkett") referred to her

as "an ignorant black girl," among other discriminatory acts. Plaintiff also alleges that

both Defendant UCP and Defendant Purkett (in her individual capacity) discriminated

against her in violation of the New York City Human Rights Law, N.Y.C. Administrative

Code § 8-107 ("NYCHRL"), by treating her differently because of her race and

retaliating against her for complaining about a racist comment.

Plaintiff seeks lost wages (both back and front pay), damages for emotional distress, punitive damages, attorneys' fees, interest, as well as any other category of damage available under the applicable statutes.

Defendants deny these allegations in their entirety and seek dismissal of Plaintiff's discrimination and retaliation claims.[1]  Defendants further contend that they had legitimate, non-discriminatory reasons for terminating Plaintiff's employment and for any other employment actions Plaintiff alleges were unlawful.

## II.  JURY TRIAL

This action is to be tried to a jury.  Plaintiff estimates that she will need three (3) days to present her case in chief at the trial of this matter.

Defendants have not requested a jury.  Defendants estimate that they will need approximately two (2) days to complete Defendants' case in chief.

## III.  STIPULATED FACTS

The pleadings are deemed amended to embrace the following, and only the following, contentions of the parties.

1. UCP is a non-profit agency that provides services to individuals with cerebral palsy and other developmental disabilities in New York City.

2. UCP's residential services program provides twenty-four-hour (24-hour) care to developmentally disabled adults in a residential setting.

---

[1] Defendants have pending a motion for partial summary judgment seeking dismissal of Plaintiff's discrimination claims and hostile work environment claim.

3.  These individuals are frequently referred to as "consumers." Residence Program Specialists ("RPSs") assist with the daily needs of consumers, including, but not limited to dressing, dispensing medication, bathing and feeding.

4.  Plaintiff commenced employment with Defendant UCP on or about June 9, 2009 as an on-call RPS at Defendant UCP's residential services program on Staten Island, New York.

5.  Plaintiff continued to be employed as an RPS until her termination by Defendant UCP on or about September 15, 2010.

6.  UCP's Residential Services program is regulated by the New York State Office for People with Developmental Disabilities ("OPWDD").

7.  Plaintiff is an African-American female who self identifies as black.

8.  Defendant Purkett is a Caucasian female.

9.  Plaintiff filed a Charge of Discrimination (the "Charge") against UCP with the Equal Employment Opportunity Commission ("EEOC") on or about July 18, 2011, alleging discrimination and retaliation on the basis of race.

10. On or about September 20, 2011, upon Plaintiff's request, the EEOC issued Plaintiff a Right to Sue Notice.

11. Plaintiff commenced the instant action on or about November 9, 2011.

12. Defendants timely filed their Answer to the Complaint on December 28, 2011, denying all material allegations.

**IV. PARTIES' CONTENTIONS**

The pleadings are deemed amended to embrace the following, and only the following, contentions of the parties:

3

A.    Plaintiff's Contentions

1.  Plaintiff Allen is an African American female who is approximately thirty (30) years of age and lives in Staten Island, New York. *Plaintiff testimony* and *Defendant Purkett testimony.*

2.  Plaintiff began working for Defendant UCP in June of 2009 as a Residence Program Specialist ("RPS") on a part-time basis. *Plaintiff testimony.*

3.  Thereafter, in or about Jun 2010, Plaintiff was employed full time by Defendant UCP as an RPS II. *Plaintiff testimony.*

4.  As a Residence Program Specialist, Plaintiff was earning a salary of approximately fifteen thousand dollars ($15,000) a year. *Plaintiff testimony.*

5.  Defendant Purkett knows that Plaintiff was, at all relevant times, a member of the United Federated Teachers union during Plaintiff's employment. *Purkett testimony.*

6.  In or about August 2010, Defendant Purkett called Plaintiff an "ignorant black girl" while speaking with a client of UCP, specifically NN.[2] *Jerry Brown testimony, NN testimony, Plaintiff testimony.*

7.  This conduct occurred in front of other employees of Defendant UCP including Jerry Brown. *Jerry Brown testimony, NN testimony, Plaintiff testimony. Seiler testimony.*

8.  As a result of Defendant Purkett's behavior the client, NN, was visibly upset. *Plaintiff testimony.*

---

[2] The parties agree to refer to this third-party witness, and consumer of Defendant UCP, by her initials "NN" for the purposes of submitting this document jointly.  Plaintiff reserves her right to continue referring to NN by her full name in all other contexts in this matter.

9.  Plaintiff brought this issue to the attention of her union representative and then Defendant UCP's Director of Human Resources, Alan Seiler, and specifically addressed issues of race discrimination and other offensive comments and behavior on the part of Defendant Purkett. *Seiler testimony, Plaintiff testimony.*

10. Alan Seiler telephoned Defendant Purkett about the incident.  Directly after the call, Defendant Purkett was overheard by Ms. Deborah, an employee of Defendant UCP, saying in a threatening manner to no one in particular, "I'm gonna fix her," referencing the aforementioned incident and the Plaintiff. *Deborah testimony, Allen testimony.*

11. After the conversation between Mr. Seiler and Defendant Purkett, the retaliation commenced at full throttle as she began treating the Plaintiff in an even worse and more offensive manner, including her belittling Plaintiff in front of consumers and coworkers. *Plaintiff testimony.*

12. Despite Plaintiff's complaints about the race discrimination, no disciplinary action was ever taken against Defendant Purkett, nor was an apology ever offered. *Purkett testimony, Plaintiff testimony.*

13. Several months prior to Plaintiff's termination, Plaintiff approached Defendant Purkett and expressed concern over dangerous  and improper actions that were being engaged in by her then-colleague Vanessa Williams with respect to a consumer.  Defendant Purkett assured the Plaintiff this information would be kept confidential.  Plaintiff relied on her representation. *Purkett testimony, Plaintiff testimony.*

14. Defendant UCP had encourages disclosure of such dangerous behavior in order to maintain a safe environment for all employees and consumers. *Purkett testimony, Plaintiff testimony, Seiler testimony.*

15. After the aforementioned disclosure to Defendant Purkett, during a staff meeting at Defendant UCP, Defendant Purkett informed the entire staff that Plaintiff had reported to her superiors the coworker's dangerous behavior on the job. *Purkett testimony, Plaintiff testimony.*

16. Defendant Purkett had no reason to expose the Plaintiff being the one who had attempted to rectify a dangerous situation; she sought only to create further tensions in the workplace for the Plaintiff. *Plaintiff testimony.*

17. No other supervisor or manager had previously revealed the identity of any employee who had reported a health or safety violation in the workplace. *Plaintiff testimony. Purkett testimony.*

18. Defendant Purkett was not Plaintiff's direct supervisor. *Plaintiff testimony, Purkett testimony.*

19. Defendant Purkett never gave Plaintiff a written warning. *Plaintiff testimony, Purkett testimony.*

20. Defendant Purkett never instructed anyone else to give Plaintiff a written warning. *Purkett testimony.*

21. In violation of the company rules and other regulations, Defendant Purkett took it upon herself to secretly keep her own separate, hidden personnel file on Plaintiff. *Plaintiff testimony, Purkett testimony, P-Allen 31.*

22. This other file, maintained by Defendant Pukett, contained the purported verbal warnings. *Plaintiff testimony, Purkett testimony, P-Allen 1.*

23. Plaintiff was never afforded an opportunity to review the contents of this secret file while she was employed at Defendant UCP. *Purkett testimony, Plaintiff testimony.*

24. Plaintiff had no knowledge of the existence of the aforementioned file until Defendant Purkett testified to same at her deposition. *Plaintiff testimony.*

25. Defendant Purkett's alleged verbal warning forms for Plaintiff were never placed in Plaintiff's official personnel file, but were stored separately by Defendant Purkett and were never shown to Plaintiff. *Purkett testimony, Plaintiff testimony.*

26. Plaintiff's official personnel file, which did not contain records of Defendant Purkett's verbal warnings, was stored separately from her private file. *Purkett testimony, Plaintiff testimony, P-Allen 1.*

27. Pursuant to the Collective Bargaining Agreement ("CBA") of the Plaintiff's Union only one employment file was to be maintained by the employer. *Purkett testimony, Plaintiff testimony, P-Allen 31.*

28. Defendant Purkett, as an agent of UCP and supervisor knew she was responsible for complying with the agreement. *Purkett testimony, P-Allen 1.*

29. Defendant Purkett also knows that no documents should be placed in an employee's personnel unless it has been viewed by the employee. *Purkett testimony, Plaintiff testimony.*

30. Access to these warnings are essential as employees, pursuant to the CBA, might not be aware that they had been verbally warned. *Purkett testimony, Plaintiff testimony, P-Allen 31.*

31. Defendant Purkett believed she was not required to tell employees that they had been verbally warned. *Purkett testimony.*

32. Defendant Purkett never gave Plaintiff the opportunity to review memorialized verbal warnings she prepared. *Purkett testimony, Plaintiff testimony.*

33. Defendant Purkett does not allow any employees to review the verbal warning notes she keeps regarding them. *Purkett testimony, Plaintiff testimony.*

34. Verbal warnings, issued at Defendant UCP, are for egregious conduct according to Defendant Purkett. *Purkett testimony.*

35. Written warnings at Defendant UCP are for more egregious conduct according to Defendant Purkett. *Purkett testimony.*

36. Defendant Purkett never gave Plaintiff a written warning before Plaintiff was terminated. *Purkett testimony, Plaintiff testimony.*

37. Defendant Purkett now claims that Plaintiff was terminated because her demeanor was allegedly aggressive toward NN, consumer of Defendant UCP.

38. Defendant Purkett never had a conversation with NN about the quality of Plaintiff's service to NN.

39. There is no evidence that Defendant UCP conducted any investigation into the "ignorant black girl" statement nor was Defendant Purkett ever interviewed by anyone regarding the statement. *Purkett testimony, Seiler testimony.*

40. Defendant Purkett did not:

     i)     Follow UCP policies and procedures;.

     ii)    Adhere to the terms of the Collective Bargaining Agreement ("CBA"); and,

     iii)   Follow policies of the CBA and Defendant UCP by secretly maintaining her own file on the Plaintiff, placing items in the Purkett File that contained false statements about Plaintiff and items that were never placed in Plaintiffs actual personnel file at corporate headquarters. *Purkett testimony, Plaintiff testimony.*

41. Plaintiff spoke with her Union representative and the Director of Human Resources, Alan Seiler, who spoke with Defendant Purkett. *Seiler testimony, Purkett testimony, Plaintiff testimony.*

42. While Mr. Seiler spoke with Defendant Purkett, she was overheard by an employee of Defendant UCP, saying in a threatening manner "I'm gonna fix her," referencing Plaintiff and the aforementioned incident.

43. After the conversation between Alan Seiler and Defendant Purkett, the retaliation commenced at full throttle as Defendant Purkett began treating Plaintiff even worse and more severely, belittling the Plaintiff in her in front of consumers and coworkers. *Plaintiff testimony.*

44. Despite Plaintiff's complaints about the race discrimination, no disciplinary action was taken against Defendant Purkett, nor was Plaintiff even offered an apology. *Purkett testimony, Plaintiff testimony.*

45. One (1) month after filing a complaint with Defendant UCP's Human Resources, Plaintiff was terminated from Defendant UCP. *Purkett testimony, Plaintiff testimony.*

46. During the same phone conversation, after inquiring further, Plaintiff was told by Defendant Purkett "calling the union and HR was completely unacceptable, and because you did so, you are no longer employed with [Defendant UCP]." *Purkett testimony, Plaintiff testimony.*

47. Written warnings are for more egregious conduct and Defendant Purkett never gave the Plaintiff a written warning before she had her terminated. *Purkett testimony, Plaintiff testimony.*

48. Defendant Purkett completed at least two (2) of the verbal warning forms for Plaintiff <u>after</u> Plaintiff reported the "ignorant black girl" comment to Defendant UCP's Human Resources.

49. Although Defendant Purkett claims that she terminated Plaintiff because her demeanor was allegedly aggressive toward consumers of Defendant UCP, Defendant Purkett never even had a conversation with consumer NN about Plaintiff and consumer NN never complained about the Plaintiff.


B.    Defendants' Contentions

1. Plaintiff was a problem employee throughout her time at UCP. Specifically, Plaintiff exhibited troubling behaviors, including argumentativeness and insubordinate behavior toward her supervisors. She often engaged in these behaviors in the presence of UCP's consumers and staff. *DX 15, DX 17, DX 18;*

Case 1:11-cv-08057-CM-KNF   Document 50   Filed 11/13/12   Page 11 of 35

*Purkett Testimony, Trantino Testimony, Quinones Testimony.*

2. Plaintiff's disciplinary problems started prior to July, 2010, when Louella Purkett became Program Director at the Castleton residence. *DX 14, DX 15.*

3. In September 2009, Plaintiff was verbally counseled for failing to document behaviors or goals for a consumer. *DX 14.*

4. Plaintiff was the subject of a serious disciplinary action in November 2009 while she was an on-call staff member. Specifically, Plaintiff had engaged in hostile behavior and threatened a nurse at a community hospital while engaged in her UCP work duties. *DX 15, DX 21.*

5. Plaintiff's relationship with Ms. Purkett got off to a rocky start after Ms. Purkett became Director in July 2010. *Purkett Testimony.*

6. Shortly after Ms. Purkett started working at the Castleton site in July 2010, Plaintiff informed her that another staff member was leaving her shift early, thereby creating problems for staff that remained. *Plaintiff Testimony, Purkett Testimony.*

7. During the first staff meeting held by Purkett at the Castleton residence, Ms. Purkett stated that it was unacceptable for staff to leave their shift without permission, and explained that it created an undue burden on other staff and was unfair. *Purkett Testimony, Plaintiff Testimony; DX 29.*

8. During the staff meeting, Ms. Purkett questioned Plaintiff as to how it made her feel when employees left early and remaining staff were left shorthanded. Ms. Purkett did not inform the staff that Plaintiff had accused anyone of leaving early.

However, Plaintiff interpreted the question in this manner. *Purkett Testimony; DX 29, DX 30.*

9. Plaintiff became visibly angry and accused Purkett of singling her out. Purkett apologized to Plaintiff, but Plaintiff refused to accept her apology. Plaintiff remained hostile to Purkett following this incident. *Purkett Testimony; DX 30.*

10. Plaintiff's main responsibility from June 7, 2010 to September 15, 2010 was to provide care to NN, an individual with serious mental and psychological disabilities. *DX 8, DX 29; Plaintiff Testimony, Purkett Testimony.*

11. In early July 2010, Plaintiff accompanied NN to a birthday celebration hosted by NN's legal guardian, AHRC. *DX 15; Purkett Testimony, Plaintiff Testimony, Rosenstein Testimony, Kulshanova Testimony.*

12. On July 9, 2010, representatives from AHRC called Purkett to report that Plaintiff had behaved inappropriately during NN's birthday party. Specifically, the AHRC representatives reported to Ms. Purkett that Plaintiff behaved in an anti-social manner. The AHRC representatives also reported that they were concerned that Plaintiff's negative attitude had an adverse effect on NN's mood and demeanor. *DX 15; Purkett Testimony, Rosenstein Testimony, Kulshanova Testimony.*

13. After receiving the AHRC report, Purkett began to watch Plaintiff more closely and observed several problems with Plaintiff's performance and conduct. Purkett often spoke to Plaintiff about various performance deficiencies and counseled her on several occasions regarding her performance. *Purkett Testimony; DX 16, DX 17.*

Case 1:11-cv-08057-CM-KNF   Document 50   Filed 11/13/12   Page 13 of 35

14. In July 2010, for example, Purkett observed that Plaintiff, rather than waiting outside the Castleton residence for a bus to drop NN off from her educational program, would wait inside another apartment, from which she could look out the window and observe when the bus arrived. As Plaintiff did not work in that apartment, Purkett asked her to stop waiting there for the bus and to instead wait outside for NN at NN's designated arrival time. *Purkett Testimony.*

15. While this incident itself was not considered a particularly serious issue, Plaintiff's response to it did raise serious concerns. The next day, NN complained to Purkett that Plaintiff should not have to wait outside for NN, thereby signaling to Purkett that Plaintiff had inappropriately informed NN of the details of the discussion between Purkett and Plaintiff. *Purkett Testimony.*

16. On July 17, 2010, Plaintiff took NN into Manhattan via public transportation without first alerting Purkett or any other member of the management team of where she was going. Purkett counseled Plaintiff about this issue, asking that, in the future, she keep management informed of NN's whereabouts at all times. *DX 16; Purkett Testimony.*

17. On August 19, 2010, when working at the Castleton site, Purkett entered Castleton Apartment 2C (an apartment to which she was not assigned) and observed Plaintiff speaking with another staff member who was not on duty. It was apparent to Purkett that Plaintiff was speaking negatively about other staff members. At the time, consumers were present and able to hear the conversation. Accordingly, Purkett asked Plaintiff to leave the apartment to speak with her privately. Plaintiff however refused and became agitated, crossing her arms and

refusing to acknowledge Purkett. Purkett counseled Plaintiff in connection with this incident. *DX 17; Purkett Testimony.*

18. On September 9, 2010, Maria Trantino reported to Purkett that she overheard Plaintiff complaining and speaking disparagingly about management in the presence of a consumer. Ms. Trantino further reported that when she questioned Plaintiff, Plaintiff simply rolled her eyes and walked away. Ms. Trantino issued Plaintiff a warning for insubordination in connection with this incident. *DX 18; Trantino Testimony, Purkett Testimony.*

19. In September 2010, Purkett contacted Alan Seiler, UCP's then Director of Human Resources, to discuss Plaintiff's performance and recent behavior. Purkett recommended that Plaintiff's employment be terminated based on the September 9 incident and her history of similar poor conduct at UCP. *Purkett Testimony, Seiler Testimony.*

20. Purkett is in no way biased against African-American individuals and never considered Plaintiff's race in connection with the decision to terminate her employment or in regard to any other employment action involving Plaintiff. *Purkett Testimony.*

21. Purkett has hired African-American employees to management positions in the Residential Services programs on Staten Island, including Felicia Shields, who is the Assistant Program Director at the Castleton residence. Purkett Testimony.

22. Purkett's direct supervisor, Dahlian Porter, is African-American. *Porter Testimony.*

23. Plaintiff claims that Purkett called Plaintiff an "ignorant black girl" when

14

speaking to NN. Plaintiff claims that this statement was reported to her by NN and another employee. Defendants deny this allegation and contend that the statement is inadmissible hearsay. *DX 1, DX 2.*

24. In or about August, 2010, Plaintiff reported to Alan Seiler, UCP's Director of Human Resources, that Purkett had called her an "ignorant black girl." Plaintiff further reported to Mr. Seiler that she had not heard the alleged comment directly but, rather, that it had been reported to her by NN. Mr. Seiler thanked Plaintiff for reporting the issue and said that he would look into it. Mr. Seiler spoke to Ms. Purkett, who denied having ever made such a comment. *Plaintiff Testimony, Seiler Testimony, Purkett Testimony.*

25. At Mr. Seiler's request, Dahlian Porter, UCP's Director of Residential Services, spoke to NN to determine whether she had heard Purkett make a racial remark about Plaintiff. NN denied having ever heard Purkett make the alleged comment. *Porter Testimony, Seiler Testimony, Purkett Testimony.*

26. Mr. Seiler determined that the allegation made by Plaintiff was untrue based on Purkett's denial and NN's failure to support Plaintiff's allegation. *Seiler Testimony.*

27. Apart from hearsay, Plaintiff has offered no evidence of discriminatory animus on the part of Purkett or UCP.

28. UCP's decision to terminate Plaintiff on September 15, 2010 was unrelated to her report to Mr. Seiler of NN's alleged comment. UCP's decision to terminate Plaintiff's employment was based solely on her conduct and performance during the short time that she worked under Ms. Purkett as detailed above. *DX 19, Seiler*

*Testimony, Purkett Testimony.*

29. UCP elected to terminate Plaintiff's employment while she was still a probationary employee as per the CBA between UCP and the Union.  *DX 9, DX 10, DX 19, DX 20, DX 29.*

30. Plaintiff did not believe that Purkett was discriminating against her at the time she engaged in the alleged protected activity of reporting Purkett's alleged comment to NN.  *DX 29; Seiler Testimony.*

31. Plaintiff's claim that Purkett informed her in a telephone conversation that she was being terminated because she reported Ms. Purkett's alleged comment is fabricated and denied unequivocally by Defendants.   Rather, Ms. Trantino advised Plaintiff that she was being terminated based on her performance and probationary status.  *Trantino Testimony, Purkett Testimony.*

32. Purkett has recommended the termination of numerous employees for disciplinary reasons during her employment at UCP.  *Purkett Testimony.*

33. Plaintiff failed to mitigate her damages by not seeking alternative employment after her employment at UCP terminated.  *DX 29.*

34. Any backpay awarded to Plaintiff must be cut off as of June 2011 at which time she obtained employment as a laborer at a higher salary than she was earning at UCP.  *DX 29; Plaintiff Testimony.*

35. Plaintiff did not seek any medical, psychological or other treatment or counseling in connection with the emotional distress she claims to have suffered as a result of her employment with UCP.  Plaintiff has offered no other evidence to justify an award of damages for emotional distress.  *Plaintiff Testimony; DX 29.*

36. Plaintiff is not entitled to punitive damages.

## V. ISSUES TO BE TRIED

1.  Whether Plaintiff was subjected to discrimination based on her race, in violation of Title VII.

2.  Whether Plaintiff was subjected to discrimination based on her race, in violation of the NYCHRL.

3.  Whether Plaintiff was subjected to a hostile work environment based on her race, in violation of the NYCHRL.

4.  Whether Plaintiff was subjected to retaliation within the meaning of Title VII for complaining to Defendant UCP.

5.  Whether Plaintiff was subjected to retaliation within the meaning of the NYCHRL for complaining to Defendant UCP that Defendant Purkett allegedly called her an "ignorant black girl."

6.  Whether Plaintiff's termination was in retaliation for her complaints about Defendant Purkett's behavior.

7.  Whether Defendants' given reason for termination is pretext for an alleged illegal retaliatory termination.

8.  Whether Plaintiff suffered emotional distress due to the alleged illegal hostile work environment.

9.  Whether Plaintiff suffered emotional distress due to the alleged illegal retaliatory termination.

17

10. Whether Defendant Purkett in her individual capacity is liable for the alleged hostile work environment.

11. Whether Plaintiff has sustained damages as the result of any proven discrimination or retaliation.

12. Whether Defendant UCP should be liable for compensatory damages for the alleged discrimination.

13. Whether Defendant UCP should be liable for compensatory damages for the alleged hostile work environment.

14. Whether Defendant UCP should be liable for compensatory damages for the alleged illegal retaliatory termination.

15. Whether Defendant Purkett in her individual capacity should be liable for compensatory damages for the alleged discrimination.

16. Whether Defendant Purkett in her individual capacity should be liable for compensatory damages for the alleged hostile work environment.

17. Whether Defendant Purkett in her individual capacity should be liable for compensatory damages for the alleged illegal retaliatory termination.

18. Whether Defendant UCP engaged in intentional discrimination against Plaintiff, with malice or with reckless indifference.

19. Whether Defendant UCP should be liable for punitive damages for their alleged intentional discrimination against Plaintiff.

20. Whether Defendant Purkett in her individual capacity engaged in intentional discrimination against Plaintiff, with malice or with reckless indifference.

21.   Whether  Plaintiff  is  entitled  to  punitive  damages  for  any  proven discrimination or retaliation by Defendant UCP.

22.   Whether  Plaintiff  is  entitled  to  punitive  damages  for  any  proven discrimination or retaliation by Defendant Purkett.

## VI.  PLAINTIFF'S EXHIBITS

P-Allen 1.  Defendants'  Production  of  Documents,  Bates  Stamped  UCP000001  to UCP000256  *not admitted*

P-Allen 2.  UCP Employee Master Change Form, September 15, 2010, Bates Stamped UCP000001  *admitted*

P-Allen 3.  UCP  Time  &  Attendance  Record,  Bates  Stamped  UCP000002  to UCP000005  *admitted*

P-Allen 4.  UCP/NYC Employee Separation Record, Bates Stamped UCP000006  *admitted*

P-Allen 5.  Termination Letter dated September 15, 2010, Bates Stamped UCP000007  *admitted*

P-Allen 6.  UCP  Employee  Master  Change  Form,  June  7,  2010,  Bates  Stamped UCP000008  *admitted*

P-Allen 7.  UCP  Disciplinary  Action  Notice  Form,  November  24,  2009,  Bates Stamped 000009 to UCP000010  *admitted*

P-Allen 8.  Verbal Warning, September 2, 2009, Bates Stamped UCP000240  *admitted*

P-Allen 9.   Warning, July 17, 2010, Bates Stamped UCP000013 and UCP000245 to UCP000247  *admitted as business record, subject to authentication*

P-Allen 10.  Verbal Warning, July 24, 2010, Bates Stamped UCP000238  *admitted*

P-Allen 11.  Verbal Warning, August 19, 2010, Bates Stamped UCP000012 and UCP000239  *admitted*

P-Allen 12.   Verbal Warning, September 9, 2010, Bates Stamped UCP000011 and
UCP000241   *admitted*

P-Allen 13.   Statement regarding Plaintiff Allen's complaint of discrimination, Bates
Stamped UCP000014   *admitted as business record, subject to authentication*

P-Allen 14.   Statement regarding Plaintiff's Allen work history and termination,
UCP000015   *admitted subject to connection*

P-Allen 15.   Kelly Vassallo Letter, November 22, 2009, Bates Stamped UCP000016   *admitted*

P-Allen 16.   UCP Employment Notice, Bates Stamped UCP000017   *admitted*

P-Allen 17.   UCP Employment Application for Plaintiff Allen, December 10, 2008,
Bates Stamped UCP000018 to UCP000022   *admitted*

P-Allen 18.   E-mails between Loretta Thomas and Nirvelyn Jean-Simon, June 10-11,
2010, Bates Stamped UCP000023   *not admitted*

P-Allen 19.   Allen's Learner Permit, Bates Stamped UCP000024   *not admitted*

P-Allen 20.   UCP   code   of   Ethics   and   Personal   Policies   for
Staff/Volunteers/Consultants, Bates Stamped UCP000025 to Bates
Stamped UCP000028   *admitted*

P-Allen 21.   Administrative Memorandum dated December 18, 2001: Harassment
and Sexual Harassment Policy Statement, Bates Stamped UCP000029 to
UCP000030   *admitted*

P-Allen 22.   UCP NYC Information Questionnaire, Bates Stamped UCP000031 to
UCP000033   *admitted*

P-Allen 23.   Professional Reference Check Form, Bates Stamped UCP00034 to
UCP000036   *not admitted*

20

P-Allen 24.  Allen Employee's Withholding Allowance Certificate (IT-2014) and W4

Form, Bates Stamped UCP000037 to UCP000038   *not admitted*

P-Allen 25.  EEOC File, Bates Stamped UCP000039 to UCP000061

P-Allen 26.  EEOC Intake Questionnaire, Charge No. 520-2011-02226, dated May 6,

2011

*not admitted*

P-Allen 27.  EEOC Charge of Discrimination dated June 14, 2011

P-Allen 28.  EEOC Letter to Allen, July 18, 2011

P-Allen 29.  Notice of Right to Sue, September 20, 2011

P-Allen 30.  UCP Employee Handbook, Bates Stamped UCP00062 to UCP000118

*admitted*

P-Allen 31.  Collective Bargaining Agreement between UCP and United Federation

of Teachers, AFT, NYSUT, AFL-CIO for the period August 29, 2005   *admitted*

through December 29, 2009, Bates Stamped UCP000119 to UCP000181

P-Allen 32.  Defendant Purkett's Personnel File, Bates Stamped UCP000182 to

UCP000237   *not admitted*

P-Allen 33.  Separation Record dated September 16, 2010, Bates Stamped

UCP000242   *admitted*

P-Allen 34.  UCP Disciplinary Action Form, Bates Stamped UCP000243 to

UCP000244   *admitted*

P-Allen 35.  UCP of NYC Behavioral Support Plan, Bates Stamped UCP000248 to

UCP000250, and Bates Stamped UCP000254 to UCP000256   *withdrawn*

P-Allen 36.  Appointment of a guardian for NN, July 9, 1999, Bates Stamped

UCP000251 to UCP000253   *withdrawn*

P-Allen 37.  UCP Job Description for Residence Program Specialist II   *admitted*

P-Allen 38.   National Labor Relations Board – Charge Against Employer *not admitted*

P-Allen 39.   UCP Letter to Allen, June 25, 2010 *admitted*

P-Allen 40.   Transcript of Louella Purkett Deposition *discrete portions may be admitted as party admissions*

P-Allen 41.   Transcript of Shameekia Allen Deposition *not admitted*

P-Allen 42.   Transcript of NN Deposition *not admitted*

*admitted regarding damages*

P-Allen 43.   Plaintiff's Federal Tax Returns 2009

P-Allen 44.   Plaintiff's Federal Tax Returns 2010

P-Allen 45.   Plaintiff's Federal Tax Returns 2011

P-Allen 46.   Plaintiff's New York State Tax Returns 2009

P-Allen 47.   Plaintiff's New York State Tax Returns 2010

P-Allen 48.   Plaintiff's New York State Tax Returns 2011

P-Allen 49.   Complaint dated November 9, 2011 *not admitted*

P-Allen 50.   Answer dated December 28, 2011 *not admitted*

P-Allen 51.   Defendant UCP Rule 7.1 Corporate Disclosure Statement, December 28,

2011 *not admitted*

*not admitted*

P-Allen 52.   Plaintiff's Rule 26 Initial Disclosures February 7, 2012

P-Allen 53.   Defendants' Initial Disclosures, February 8, 2012

P-Allen 54.   Defendants' First Set of Interrogatories, February 9, 2012.

P-Allen 55.   Defendants' First Request for Production of Documents, February 9,

2012.

P-Allen 56.   Plaintiff's First Request for Interrogatories and the Production of

Documents, February 9, 2012

P-Allen 57. Plaintiff's Response to Defendant's First Request for Interrogatories, April 14, 2012

P-Allen 58. Defendants' Objections and Responses to Plaintiff's First Request for the Production of Documents, May 9, 2012

P-Allen 59. Letter from Defendants' counsel to Plaintiff's counsel, May 23, 2012.

P-Allen 60. Defendants' Response to Plaintiff's First Set of Interrogatories, May 30, 2012

*not admitted*

P-Allen 61. Letter from Plaintiff's counsel to Defendants' counsel, May 31, 2012

P-Allen 62. Defendants' Supplemental Objections and Responses to Plaintiff's First Request for the production of Documents and Defendants' Objections and Responses to Plaintiff's Supplemental Request for the Production of Documents, June 12, 2012

P-Allen 63. Defendants' Second Set of Interrogatories directed to Plaintiff, June 12, 2012

P-Allen 64. Defendant's Supplemental Objections and Responses to Plaintiff's Requests for the Production of Documents, August 10, 2012

P-Allen 65. Defendants' Supplemental Objections and Responses to Plaintiffs Request for the Production of Documents, September 5, 2012.

P-Allen 66. Defendants' Motion for Partial Summary Judgment, October 5, 2012

P-Allen 67. Affidavit of Louella Purkett in Support of Defendants' Motion for Partial Summary Judgment, October 5, 2012 *admitted*

P-Allen 68. Defendants' Rule 56.1 Statement, October 5, 2012 *not admitted*

23

P-Allen 69.   Declaration of Sean Close in support of Defendants' Motion for Partial

Summary Judgment, October 5, 2012   *not admitted*

P-Allen 70.   Defendants' Responses to Plaintiff's Interrogatories   *specifically identified portions may be admitted as party admission*

Plaintiff reserves the right to introduce exhibits and documents identified by the

Defendants or third parties and the right to introduce other exhibits and documents for the

purpose of impeachment.

Plaintiff reserves the right to amend the schedule of exhibits and documents in

this Joint Pre-Trial Order.

## VII.  DEFENDANTS' EXHIBITS

*not admitted*

DX 1.   Complaint dated November 9, 2011

DX 2.   Answer dated December 28, 2011

DX 3.   Notice of Right to Sue dated September 20, 2011

DX 4.   Plaintiff's Rule 26 Initial Disclosures

DX 5.   Plaintiff's Responses to Defendants' Interrogatories dated April 4, 2012   *specifically identified portions may be admitted as party admission*

DX 6.   Plaintiff's Employment Application

DX 7.   Employee Master Change Form dated June 7, 2010

DX 8.   Job Description – Residence Program Specialist II

DX 9.   Collective Bargaining Agreement between UCP and United Federation of

Teachers, AFT, NYSUT, AFL-CIO for the period December 30, 2009

through June 29, 2012

DX 10.  Collective Bargaining Agreement between UCP and United Federation of

Teachers, AFT, NYSUT, AFL-CIO for the period August 29, 2005 through

December 29, 2009

DX 11.   UCP Employee Handbook

DX 12.   Administrative Memorandum dated December 18, 2001: Harassment and

Sexual Harassment Policy Statement

DX 13.   UCP Code of Ethics and Personnel Policies For

Staff/Volunteers/Consultants dated April 13, 2009

DX 14.   Verbal Warning dated September 2, 2009

DX 15.   Disciplinary Action Form dated November 24, 2009

DX 16.   Verbal Warning dated July 17, 2010

DX 17.   Verbal Warning dated August 19, 2010

DX 18.   Verbal Warning dated September 9, 2010

DX 19.   Separation Record dated September 16, 2010

DX 20.   Termination Letter dated September 15, 2010

DX 21.   Statement of Kelly Vassallo, R.N., Richmond University Medical Center,

dated November 22, 2009

DX 22.   EEOC Charge of Discrimination dated June 14, 2011

DX 23.   Plaintiff's Federal Tax Returns 2009[3]

DX 24.   Plaintiff's New York State Tax Returns 2009

DX 25.   Plaintiff's Federal Tax Returns 2010

DX 26.   Plaintiff's New York State Tax Returns 2010

DX 27.   Plaintiff's Federal Tax Returns 2011

DX 28.   Plaintiff's New York State Tax Returns 2011

*[Handwritten margin note: Parties to determine overlap with Plaintiff's exhibits and eliminate from list of Defendants' exhibits. Let the court know if any Defendants' exhibits remain to be addressed.]*

---

[3] Plaintiff provided Defendants with authorizations to enable Defendants to obtain her federal and state tax returns for the years 2009, 2010 and 2011 on November 13, 2012. In the event Defendants are unable to obtain those tax returns prior to the start of trial, Defendants reserve the right to apply to the Court for its assistance in obtaining same.

DX 29.   Plaintiff's Deposition Transcript   *discrete portions may be admitted as party admissions*

DX 30.   Purkett Deposition Transcript   *not admitted*

DX 31.   Plaintiff's Response to Defendants' Second Set of Interrogatories Directed
to Plaintiff dated August 10, 2012   *specifically identified portions may be admitted as party admissions*

Defendants reserve the right to introduce exhibits and documents identified by the

Plaintiff and to introduce other exhibits and documents for impeachment purposes.

Defendants reserve the right to amend the schedule of exhibits and documents in

this proposed Joint Pre-Trial Order.

Defendants also reserve the right to object at the time of trial to the use or

introduction of any exhibits or other documents by Plaintiff.


## VIII.  STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

Any objections not set forth herein will be considered waived absent good cause
shown.

A.  Plaintiff's Objections to Defendants' Proposed Exhibits

DX 14:        Hearsay

DX 15:        Hearsay

DX 16:        Hearsay

DX 17:        Hearsay

DX 18:        Hearsay

DX 19:        Hearsay

DX 20:        Hearsay

DX 21:        Hearsay

DX 24:        Relevancy

DX 25:      Relevancy

DX 26:      Relevancy

DX 27:      Relevancy

DX 28:      Relevancy

DX 29:      Relevancy

Plaintiff objects to this exhibit.

B. Defendants' Objections to Plaintiff's Proposed Exhibits

P-Allen 1.   *Defendants' Production of Documents, Bates Stamped UCP000001 to UCP000256*

Exhibit is not sufficiently identified as to allow Defendants to object to the exhibit; Exhibit is inadmissible because it contains more than one document and/or is an improper collection of documents; Irrelevant (FRE 402); Cumulative (FRE 403).

P-Allen 2.   *UCP Employee Master Change Form, September 15, 2010, Bates Stamped UCP000001*

Irrelevant (FRE 402); Cumulative (FRE 403); Waste of Time (FRE 403).

P-Allen 3.   *UCP Time & Attendance Record, Bates Stamped UCP000002 to UCP000005*

Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 9.   *Warning, July 17, 2010, Bates Stamped UCP000013 and UCP000245 to UCP000247*

Irrelevant (FRE 402) Cumulative (FRE 403); Waste of Time (FRE 403).

P-Allen 13.   *Statement regarding Plaintiff Allen's complaint of discrimination, Bates Stamped UCP000014*

Irrelevant (FRE 402); Hearsay (FRE 802-805).

P-Allen 14.   *Statement regarding Plaintiff's Allen work history and termination, UCP000015*

Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 16.     *UCP Employment Notice, Bates Stamped UCP000017*

                Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 18.     *E-mails between Loretta Thomas and Nirvelyn Jean-Simon, June 10-11, 2010, Bates Stamped UCP000023*

                Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 19.     *Allen's Learner Permit, Bates Stamped UCP000024*

                Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 22.     *UCP NYC Information Questionnaire, Bates Stamped UCP000031 to UCP000033*

                Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 23.     *Professional Reference Check Form, Bates Stamped UCP00034 to UCP000036*

                Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 24.     *Allen Employee's Withholding Allowance Certificate (IT-2014) and W4 Form, Bates Stamped UCP000037 to UCP000038*

                Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 25.     *EEOC File, Bates Stamped UCP000039 to UCP000061*

                Irrelevant (FRE 402); Waste of Time (FRE 403); Prejudicial (FRE 403); Confusion of Issues (FRE 403); Misleading to the Jury (FRE 403).

P-Allen 26.     *EEOC Intake Questionnaire, Charge No. 520-2011-02226, dated May 6, 2011*

                Irrelevant (FRE 402); Waste of Time (FRE 403); Prejudicial (FRE 403); Confusion of Issues (FRE 403); Misleading to the Jury (FRE 403); Hearsay (FRE 802-805).

P-Allen 27.     *EEOC Charge of Discrimination dated June 14, 2011*

                Irrelevant (FRE 402); Waste of Time (FRE 403); Prejudicial (FRE 403); Confusion of Issues (FRE 403); Misleading to the Jury (FRE 403).

P-Allen 28.     *EEOC Letter to Allen, July 18, 2011*

Irrelevant (FRE 402); Waste of Time (FRE 403); Prejudicial (FRE 403); Confusion of Issues (FRE 403); Misleading to the Jury (FRE 403).

P-Allen 32. *Defendant Purkett's Personnel File, Bates Stamped UCP000182 to UCP000237*

Exhibit is not sufficiently identified as to allow Defendants to object to the exhibit; Exhibit is inadmissible because it contains more than one document and/or is an improper collection of documents; Irrelevant (FRE 402); Cumulative (FRE 403).

P-Allen 33. *Separation Record dated September 16, 2010, Bates Stamped UCP000242*

Cumulative (FRE 403).

P-Allen 34. *UCP Disciplinary Action Form, Bates Stamped UCP000243 to UCP000244*

Cumulative (FRE 403).

P-Allen 35. *UCP of NYC Behavioral Support Plan, Bates Stamped UCP000248 to UCP000250, and Bates Stamped UCP000254 to UCP000256*

Confidentiality (HIPAA).

P-Allen 36. *Appointment of a guardian for NN, July 9, 1999, Bates Stamped UCP000251 to UCP000253*

Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 38. *National Labor Relations Board – Charge Against Employer*

Exhibit is not sufficiently identified as to allow Defendants to object to the exhibit.

P-Allen 39. *UCP Letter to Allen, June 25, 2010*

Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 40. *Transcript of Louella Purkett Deposition*

Cumulative (FRE 403); Waste of Time (FRE 403); Hearsay (FRE 802-805).

P-Allen 41. *Transcript of Shameekia Allen Deposition*

29

Cumulative (FRE 403); Waste of Time (FRE 403): Hearsay (FRE 802-805).

P-Allen 42.   *Transcript of NN Deposition*

Incompetent witness (FRE 601, 602, 603); Irrelevant (FRE 402); Waste of Time (FRE 403); Confusion of Issues (RE 403); Misleading to the Jury (FRE 403); Hearsay (FRE 802-805); Confidentiality (HIPAA).

P-Allen 43.   *Plaintiff's Federal Tax Returns 2009*

Plaintiff has never provided Defendants a copy of these exhibits, which Defendants specifically requested in discovery.  As Plaintiff provided Defendants with signed authorization forms to obtain these documents from the appropriate agencies on November 13, 2012, Defendants have not yet obtained these returns. (FRCP 37(c))

P-Allen 44.   *Plaintiff's Federal Tax Returns 2010*

Plaintiff has never provided Defendants a copy of these exhibits, which Defendants specifically requested in discovery.  As Plaintiff provided Defendants with signed authorization forms to obtain these documents from the appropriate agencies on November 13, 2012, Defendants have not yet obtained these returns. (FRCP 37(c))

P-Allen 45.   *Plaintiff's Federal Tax Returns 2011*

Plaintiff has never provided Defendants a copy of these exhibits, which Defendants specifically requested in discovery.  As Plaintiff provided Defendants with signed authorization forms to obtain these documents from the appropriate agencies on November 13, 2012, Defendants have not yet obtained these returns. (FRCP 37(c))

P-Allen 46.   *Plaintiff's New York State Tax Returns 2009*

Plaintiff has never provided Defendants a copy of these exhibits, which Defendants specifically requested in discovery.  As Plaintiff provided Defendants with signed authorization forms to obtain these documents from the appropriate agencies on November 13, 2012, Defendants have not yet obtained these returns. (FRCP 37(c))

P-Allen 47.   *Plaintiff's New York State Tax Returns 2010*

Plaintiff has never provided Defendants a copy of these exhibits, which Defendants specifically requested in discovery.  As Plaintiff provided

Defendants with signed authorization forms to obtain these documents from the appropriate agencies on November 13, 2012, Defendants have not yet obtained these returns. (FRCP 37(c))

P-Allen 48.   *Plaintiff's New York State Tax Returns 2011*

Plaintiff has never provided Defendants a copy of these exhibits, which Defendants specifically requested in discovery. As Plaintiff provided Defendants with signed authorization forms to obtain these documents from the appropriate agencies on November 13, 2012, Defendants have not yet obtained these returns. (FRCP 37(c))

P-Allen 51.   *Defendant UCP Rule 7.1 Corporate Disclosure Statement, December 28, 2011*

Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 53.   *Defendants' Initial Disclosures, February 8, 2012*

Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 54.   *Defendants' First Set of Interrogatories, February 9, 2012.*

Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 55.   *Defendants' First Request for Production of Documents, February 9, 2012.*

P-Allen 56.   *Plaintiff's First Request for Interrogatories and the Production of Documents, February 9, 2012*

Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 58.   *Defendants' Objections and Responses to Plaintiff's First Request for the Production of Documents, May 9, 2012*

Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 59.   *Letter from Defendants' counsel to Plaintiff's counsel, May 23, 2012.*

Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 61.   *Letter from Plaintiff's counsel to Defendants' counsel, May 31, 2012*

Exhibit is not sufficiently identified as to allow Defendants to object to the exhibit. Defendants are unsure of the nature of the document and are unable to locate it as identified.

P-Allen 62.   *Defendants' Supplemental Objections and Responses to Plaintiff's First Request for the production of Documents and Defendants' Objections and Responses to Plaintiff's Supplemental Request for the Production of Documents, June 12, 2012*

Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 63.   *Defendants' Second Set of Interrogatories directed to Plaintiff, June 12, 2012*

Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 64.   *Defendant's Supplemental Objections and Responses to Plaintiff's Requests for the Production of Documents, August 10, 2012*

Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 65.   *Defendants' Supplemental Objections and Responses to Plaintiffs Request for the Production of Documents, September 5, 2012.*

Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 66.   *Defendants' Motion for Partial Summary Judgment, October 5, 2012*

Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 67.   *Affidavit of Louella Purkett in Support of Defendants' Motion for Partial Summary Judgment, October 5, 2012*

Irrelevant (FRE 402); Waste of Time (FRE 403); Hearsay (FRE 802-805).

P-Allen 68.   *Defendants' Rule 56.1 Statement, October 5, 2012*

Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 69.   *Declaration of Sean Close in support of Defendants' Motion for Partial Summary Judgment, October 5, 2012*

Irrelevant (FRE 402); Waste of Time (FRE 403).

P-Allen 70.   *Defendants' Responses to Plaintiff's Interrogatories*

Exhibit is not sufficiently identified as to allow Defendants to object to the exhibit.

## IX. PLAINTIFF'S WITNESS LIST

The witnesses listed below may be called at trial.  No witness not identified herein

shall be permitted to testify on either party's case in chief absent good cause shown.

I.    Shameekia Allen, Plaintiff

II.   Louella Purkett, Defendant, Program Director of Defendant UCP

III.  Alan Seiler, former Director, Human Resources of Defendant UCP

IV.   Lisa Q. Maria, Plaintiff's erstwhile supervisor at Defendant UCP

V.    ~~Shawn Allen, Residence Program Specialist at Defendant UCP~~   will not be called

VI.   Jerry Brown, former employee of Defendant UCP

VII.  Roberta Wallis, employee of Defendant UCP

VIII. NN, consumer of Defendant UCP

*Witnesses testify one time; all testimony by both sides will take place when the witness is on the stand the single time.*

## X. DEFENDANTS' WITNESS LIST

The witnesses listed below may be called at trial.  No witness not identified herein

shall be permitted to testify on either party's case in chief absent good cause shown.

I.    Shameekia Allen, Plaintiff

II.   Louella Purkett, Program Director, Defendant

III.  Maria Trantino, Assistant Program Director

IV.   Alan Seiler, former Director, Human Resources

V.    Dahlian Porter, Director of Residential Services

VI.   Lisa Quinones, Residence Manager

VII.  ~~Hollis Brownstein, Director, Human Resources~~   will not be called

*one of the other*

VIII. Randi Rosenstein, Esq., AHRC

IX.   Zhanna Kulshanova, AHRC

33

## XI.  RELIEF SOUGHT

Plaintiff seeks:

1.  Lost wages of no less than forty-five thousand dollars ($45,000) including, but not limited to,

    i)    Back pay; and,

    ii)   Front pay;

2.  Emotional distress damages in an amount of no less than two hundred fifty thousand dollars ($250,000); and,

3.  Punitive damages in an of amount no less than two hundred fifty thousand dollars ($250,000).

4.  Attorneys' fees in an amount to be determined directly prior to the conclusion of this action, but in no event would that amount be less than two hundred fifty thousand dollars ($250,000).

Plaintiff does not seek reinstatement, nor is any injunction sought.

Dated: New York, New York
November 13, 2012

Colleen McMahon
U.S.D.J.                    4/10/13


_____s/_____
Walker G. Harman, Jr.
Kimberly S. Thomsen
THE HARMAN FIRM, PC
*Attorneys for Plaintiff*
200 West 57th Street, Suite 900
New York, New York 10019
(212) 425-2600
wharman@theharmanfirm.com
kthomsen@theharmanfirm.com


_____/s/_____
Sean H. Close
Adriana S. Kosovych
PUTNEY TWOMBLY HALL & HIRSON LLP
*Attorneys for Defendants*
521 5th Avenue
New York, New York 10175
(212) 682-0020
sclose@putneylaw.com
akosovych@putneylaw.com


35